RENDERED:  APRIL 2, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1062-MR

ROBERT C. NAPIER                                                                    APPELLANT


APPEAL FROM ROCKCASTLE CIRCUIT COURT
v.      HONORABLE JEFFREY T. BURDETTE, JUDGE
ACTION NO. 18-CR-00040


COMMONWEALTH OF KENTUCKY                                          APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, JONES, AND K. THOMPSON, JUDGES.

ACREE, JUDGE:  A jury found Robert C. Napier guilty of four counts of first-degree sexual abuse (victim under age 12) and one count of first-degree sexual abuse (victim under age 16).  Prior to sentencing, Napier entered into a plea agreement with the Commonwealth, agreeing to a ten-year sentence of imprisonment in exchange for a waiver of jury sentencing and right of appeal. Napier now appeals from the trial court's judgment of conviction and from its

denial of his motion for a new trial.  We conclude Napier waived his right to a direct appeal and affirm the denial of his motion for a new trial.

## PROCEDURE

On February 26, 2019, a Rockcastle Circuit Court jury found Napier guilty of four counts of first-degree sexual abuse (victim under age 12) and one count of first-degree sexual abuse (victim under age 16).  After the guilty verdict was read into the record, the trial court went into recess.

Upon returning to the record, the Commonwealth and Napier informed the trial court they had entered into a verbal plea agreement,[1] wherein Napier waived jury sentencing and his right to appeal in exchange for a ten-year prison sentence.  The following exchange took place:

> **Commonwealth**:  I essentially made an offer to bypass jury sentencing, ten years to serve, Mr. Napier waives any future appeals that he may have.
>
> **Court**:  So, you're asking me to accept the waiver of jury sentencing from the defense, have the defendant waive his rights of appeal, set the matter for sentencing after a [presentence investigation] is completed?
>
> **Defense Counsel**:  Yes
>
> **Commonwealth**: Yes.  We may want to get it on the record today, though, that he understands he's waiving his appeal and that he understands I'm recommending ten years to serve.

---

[1] At no point did the parties memorialize the agreement into writing.

. . . .

> **Defense Counsel**: On the record, the Defendant will waive jury sentencing and accept the offer made by the Commonwealth. [Napier] needs to waive his right to appeal.

(Video Record (V.R.) 2/26/19; 7:23:19-7:24:50.)

To ensure that Napier knowingly, intelligently, and voluntarily entered into the agreement, the trial court conducted the following plea colloquy:

> **Court**: Mr. Napier, if you'll stand up. Raise your right hand for me. Do you swear and affirm to tell the truth, the whole truth, and nothing but the truth so help you God?
>
> **Napier**: Yes, sir, I do.
>
> **Court**: State your name for the record again.
>
> **Napier**: Robert Napier.
>
> **Court**: Your date of birth.
>
> **Napier**: 6/04/78.
>
> **Court**: And the last four digits of your social security number.
>
> **Napier**: [omitted.]
>
> **Court**: Are you thinking clearly now?
>
> **Napier**: Yes, sir.
>
> **Court**: Are you under the influence of any drugs or alcohol?
>
> **Napier**: No, sir, I'm not.

**Court**: Has anybody threatened you to do anything against your will (inaudible)?

**Napier**: No, sir, they haven't.

**Court**: Do you have any mental illness that might keep you from understanding what I'm saying to you?

**Napier**: No, sir.

**Court**: Do you understand that you are now waiving your right to have a jury sentence you to crimes for which you have been convicted and that you're waiving your rights to appeal the process?

**Napier**: Yes, sir, I do.

**Court**: The matter will be set for formal sentencing.

. . . .

(V.R. 2/26/19; 7:24:45-7:25:30.)

On March 15, 2019, the trial court entered a "Trial Verdict and Judgment," wherein it noted:

> [Napier] entered into an agreement in which the Commonwealth would agree to a sentence **of ten (10) years imprisonment** for each of the four (4) counts of Sexual Abuse, First Degree, and **five (5) years imprisonment** on one (1) count of Sexual Abuse, First Degree, victim under 16 years of age, with the sentences imposed to be calculated **concurrently with each other for a total of ten (10) years imprisonment. Furthermore, [Napier] stated on the record that he was in agreement with this recommendation and would therefore waive his right to appeal.**

-4-

(Record (R.) at 76-77.) Entry of a final judgment imposing sentence was postponed pending a presentence investigation and sex offender evaluation.

On March 5, 2019, prior to final sentencing, Napier filed a motion for a new trial pursuant to RCr[2] 10.02(1). On March 26, 2019, Napier filed a sworn affidavit, signed by the foreman of the jury, in support of his motion. The affidavit alleged, in part, "[d]uring deliberations two female jurors revealed they had personally been sexually abused–one by an uncle, although this fact was not revealed during voir dire[.]" (R. 83-86.) These two female jurors were never identified. Nevertheless, Napier's argument, in effect, is that he was denied a fair and impartial jury. The motion was denied without an evidentiary hearing.

The trial court followed the Commonwealth's recommendation and sentenced Napier to ten years in prison. This appeal followed.

## ANALYSIS

Napier raises two arguments on appeal: (1) he was entitled to a new trial based on newly discovered evidence that two jurors failed to respond honestly to *voir dire* questions; and (2) the trial court erred by admitting prior consistent statements of J.M., one of the minor victims in this case. However, before reaching either issue, this Court must necessarily determine whether he waived his right to appeal.

---

[2] Kentucky Rules of Criminal Procedure.

"To be valid, a guilty plea[3] must be entered 'intelligently and voluntarily.'" *Hammond v. Commonwealth*, 569 S.W.3d 404, 408 (Ky. 2019) (citation omitted). "The validity of a guilty plea must be determined not from specific key words uttered at the time the plea was taken, but from considering the totality of circumstances surrounding the plea." *Centers v. Commonwealth*, 799 S.W.2d 51, 54 (Ky. App. 1990). Solemn declarations in open court, however, "carry a strong presumption of verity." *Id.* (citing *Blackledge v. Allison*, 431 U.S. 63, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977)). We review a trial court's acceptance of a guilty plea as knowing and voluntary for clear error. *Commonwealth v. Patton*, 539 S.W.3d 651, 653 (Ky. 2018).

Napier asserts the waiver of his right to appeal was involuntary and unknowing, because the plea colloquy conducted by the trial court lacked certain elements required by *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). Specifically, he contends the colloquy did not inform him that he had a state constitutional right to appeal, did not inquire whether he was satisfied with the advice of counsel, did not lay out his choices about his right to appeal, and did not explain that a waiver of his right to "appeal the process" not only included

---

[3] We note that this is not a typical "guilty plea" as it was entered after Napier was convicted by a jury. However, the same standard applies. *See Commonwealth v. Patton*, 539 S.W.3d 651 (Ky. 2018); *Johnson v. Commonwealth*, 120 S.W.3d 704 (Ky. 2003); *Geary v. Commonwealth*, 96 S.W.3d 1 (Ky. 2001).

a waiver of his right to appeal his sentence, but also any error that may have occurred during the guilt phase of trial.

Although the colloquy conducted by the trial court was relatively short, "a knowing, voluntary and intelligent waiver does not necessarily include a requirement that the defendant be informed of every possible consequence and aspect of the guilty plea." *Turner v. Commonwealth*, 647 S.W.2d 500, 500-01 (Ky. App. 1982). "A guilty plea that is brought about by a person's own free will is not less valid because he did not know all possible consequences of the plea and all possible alternative courses of action." *Id*. at 501. Having reviewed the plea colloquy, and considering the totality of the circumstances, it is clear that Napier's plea was made knowingly, intelligently, and voluntarily.

Prior to the plea colloquy, the Commonwealth, in the presence of Napier stated the essence of the plea agreement–Napier would serve a ten-year prison sentence and would waive "***any*** future appeals that he may have." (Emphasis added.) Napier's counsel, again in his presence, acknowledged this was the deal and specifically told the trial court that he needed to waive his right to appeal. Not once did Napier indicate he did not understand what he was waiving, nor did he offer the least hint he believed he could still appeal some part of his criminal trial.

The trial court then confirmed, by plea colloquy, that Napier understood the rights he was waiving. Prompted by questions from the trial court, Napier acknowledged there was nothing mentally or otherwise hindering his ability to understand the agreement and that he was not coerced in any way to enter the plea. At the end of the colloquy, the trial court confirmed that Napier understood the ultimate consequences of his plea–a waiver of his right to appeal. As noted above, the trial court asked:

> Do you understand that you are now waiving your right to have a jury sentence you to crimes for which you have been convicted and that you're waiving your rights to appeal the process?

Napier responded, "Yes, sir, I do."

Importantly, this colloquy occurred after a trial court recess, which lasted approximately forty-five minutes.[4] During this time, the parties negotiated and reached the agreement. There is no evidence Napier did not have the opportunity to fully discuss the consequences of the plea agreement with his counsel. Nor did he indicate he needed more time to contemplate the agreement.

As the seasoned jurist presiding in this case said of the negotiated plea agreement:

---

[4] The trial court's order noted that Napier conferred with his counsel for over an hour prior to reaching an agreement. However, the trial court went off the record for a recess at 6:37:00 p.m. and returned on the record at 7:23:03 p.m., at which time the Commonwealth informed the trial court of the plea agreement.

> The Defendant was represented by three attorneys, two of [whom] are of the most experienced, well-known, and long-serving defense attorneys in this Commonwealth. Those attorneys bargained on behalf of their client to waive defect by waiving appeals in favor of a definitive, lesser potential sentence.

(R. 91.)

Given the nature of his crime, and the possibility of receiving a twenty-year sentence, it seems to this Court that Napier voluntarily entered into the plea agreement for good reason. Moreover, there is nothing in the record to indicate Napier was confused as to the nature and scope of the rights he was waiving. Accordingly, the trial court's conclusion that he knowingly, intelligently, and voluntarily waived his right to appeal is supported by substantial evidence.

Napier's valid plea agreement precludes him from raising his evidentiary concerns, which arose during the guilt phase of trial, on appeal. However, whether his waiver precludes him from appealing the denial of his motion for a new trial is a different issue. Although a plea agreement reduces the scope of appealable issues, it does not waive every constitutional right. *See Windsor v. Commonwealth*, 250 S.W.3d 306, 307 (Ky. 2008). Nor does it waive a criminal defendant's rights to seek subsequent relief in the form of a motion for a new trial, so long as the issues raised could not have been brought on direct

-9-

appeal.[5] Logically, a plea agreement waiver does not waive an appeal from the denial of a motion for a new trial that was properly before the trial court.

Here, Napier's RCr 10.02 motion for a new trial was based, in part, on newly discovered evidence of juror mendacity, which he contended resulted in a conviction by a jury that was not impartial. Unlike the evidentiary issues he raises, which could and should have been considered in his decision to enter into the plea agreement, he did not have the opportunity to contemplate this alleged and newly discovered potential juror bias prior to entering the plea. Accordingly, he was not prevented from raising this issue in his motion for a new trial, and he is not barred from appealing its denial.

We review the trial court's denial of Napier's motion for new trial under the abuse of discretion standard. *Hall v. Commonwealth*, 337 S.W.3d 595, 613 (Ky. 2011).

A new trial may be granted based on juror mendacity upon a showing "that a juror failed to answer honestly a material question on *voir dire*, and then further show[ing] that a correct response would have provided a valid basis for a challenge for cause." *Edmondson v. Commonwealth*, 526 S.W.3d 78, 83 (Ky. 2017) (quoting *Adkins v. Commonwealth*, 96 S.W.3d 779, 796 (Ky. 2003)).

---

[5] This logic has been adopted by this Court. *See Bray v. Commonwealth*, No. 2014-CA-000128-MR, 2017 WL 2713458, at *1 n.1 (Ky. App. Jun. 23, 2017).

-10-

Likewise, a new trial may be granted if it is shown "that the juror's dishonesty prevented inquiry into a critical subject that may have exposed a disqualifying bias or prejudice." *Gullett v. Commonwealth*, 514 S.W.3d 518, 525 (Ky. 2017).

Napier's argument is based on the jury foreman's affidavit disclosing the jury's deliberation discussions. In the affidavit, the foreman said that two unidentified female jurors said during deliberations that they had been sexually abused. Napier argues this means the two unidentified women did not answer honestly during *voir dire*, thereby tainting the jury. We disagree.

For purposes of our review, we disregard the questionable aspects of this affidavit because they were adequately addressed by the trial court, and move on to the substantive question – did this newly discovered evidence justify a new trial? We conclude, as did the trial court, it did not.

The trial court commenced *voir dire* by asking preliminary examination questions of the prospective jurors. Specifically, the trial court asked, "has anybody themselves been involved in a ***case*** similar to this or had a child or loved one or a spouse or sibling or someone that may have gone through a criminal case like this?" (V.R. 2/25/19, 9:49:10) (emphasis added). Obviously, neither of the unidentified jurors referenced in the affidavit came forward, although other potential jurors did.

-11-

After concluding preliminary questioning, the trial court turned *voir dire* over to the Commonwealth. The prosecutor followed up on the trial court's questioning by asking, "Has anyone had any dealings with sex abuse **cases** whether you're a victim, you've been charged, your son, brother, mother has been charged or your son, brother, mother, sister has been a victim?" (Emphasis added.) Again, neither of the suspect jurors came forward. *Voir dire* was then turned over to defense counsel.

As the trial court stated, although "an experienced defense counsel neglected to question potential jurors to their status as survivors of sexual abuse, a question was posed by the [trial c]ourt inquiring of any factor for which the jurors did not think they could serve impartially, to which no juror expressed hesitancy or reason they could not be impartial." (R. 101.) The trial court's order denying the new trial said:

> Here, all we have is an affidavit from the foreperson based on alleged statements by two unnamed jurors; in total, this amounts to mere unsupported allegations and are not sufficient to require a hearing. Moreover, no juror expressed any reason as to why they could not be impartial when asked by the Court. Further, this Court will not engage in a proverbial "witch hunt" seeking out the two alleged jurors in order to establish their alleged status as survivors of sexual assault. Because there is no showing of actual juror bias or prejudice, the Motion for a New Trial based on these grounds is OVERRULED.

(R. 104.)

-12-

We agree with the trial court that Napier's claim fails under the first prong of the juror mendacity analysis. Napier presented no proof that any juror failed to answer honestly to the questions posed during *voir dire*.

The defendant "bears the primary responsibility to ask the proper question on *voir dire* examination and a failure to so inquire will generally preclude relief." *Moss v. Commonwealth*, 949 S.W.2d 579, 581 (Ky. 1997). No one asked the members of the venire if any of them personally experienced, or was a survivor of, sex abuse. Napier's motion, in effect, erroneously presupposes that someone did. Accordingly, the trial court did not abuse its discretion by denying Napier's motion for a new trial based on juror mendacity.

## **CONCLUSION**

The Rockcastle County Circuit Court's judgment of conviction and denial of his motion for a new trial are affirmed.

JONES, JUDGE, CONCURS.

THOMPSON, K., JUDGE, DISSENTS WITHOUT WRITING SEPARATELY.

BRIEF FOR APPELLANT:

Kayla D. Deatherage
Kathleen K. Schmidt
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky