RENDERED:  MARCH 20, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0444-MR

ERIC SARGENT                                                    APPELLANT

v.
APPEAL FROM KENTON CIRCUIT COURT
HONORABLE PATRICIA M. SUMME, JUDGE
ACTION NO. 23-CR-01186

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CETRULO AND KAREM, JUDGES.

CETRULO, JUDGE:  Appellant Eric Sargent ("Sargent") appeals the Kenton

Circuit Court's order denying his motion to withdraw his guilty plea.  Sargent

asserts his guilty plea was involuntary because both he and Trial Counsel were

under duress when his plea was entered.  Upon review, we conclude the trial court

did not abuse its discretion in denying the motion as (a) the record demonstrates

the plea was entered voluntarily, and (b) the allegations of duress are refuted by the

record.  Accordingly, we affirm.

## BACKGROUND & PROCEDURAL HISTORY

In November 2023, a Kenton County grand jury indicted Sargent on one count of possession of a handgun by a convicted felon, a class C felony. *See* Kentucky Revised Statute ("KRS") 527.040. Throughout the next year, Sargent remained out of custody on bond, changed his defense counsel at least four times, and filed a motion to suppress, which the trial court denied. Eventually, a jury trial was set for August 14, 2024.

On August 13, 2024, the trial court held a hearing on Sargent's motion for a continuance ("August Continuance Hearing"). At this hearing, Trial Counsel informed the court that Sargent recently told her about another avenue of investigation. Trial Counsel was requesting a continuance in order to pursue that possible line of defense. The trial court expressed frustration at this trial delay. While advocating for her client, Trial Counsel became emotional but maintained a professional tone of voice, a coherent argument, and her client's defense. The court granted the continuance and permitted additional time for another motion to suppress if the defense's investigation resulted in the need for such a motion. After investigation, Trial Counsel determined an additional motion to suppress would not be appropriate, and trial was set for November 6.

On the morning of trial, the court denied the defense motion to dismiss the charge as unconstitutional. Immediately following the denial, Trial

Counsel placed the motion to enter a guilty plea form in front of Sargent. Without conversation, Sargent signed the motion, and the form was handed to the court.

Thereafter, the trial court conducted a thorough plea colloquy during which Sargent affirmed under oath that he was competent to proceed, understood the charge, and was entering the plea voluntarily ("November Plea"). He averred that his judgment was not clouded by alcohol, drugs, or mental illness; he acknowledged he had read, signed, and understood the motion to enter a guilty plea. Sargent agreed Trial Counsel had answered all his questions, reviewed the evidence and possible defenses, and thoroughly investigated his case. Sargent again affirmed he understood the charge against him and had been afforded enough time to consult with his counsel. He affirmed that Trial Counsel explained probation and parole to him and that he understood the finality of his decision to plead guilty. The trial court went through each right Sargent was waiving by pleading guilty, making sure that he understood he was waiving them. He asserted that no one, including his attorney, had made any promises concerning his plea. Sargent acknowledged he understood he was entering an open guilty plea, and the trial court could sentence him within the five to ten-year range. He admitted he was a convicted felon and in possession of a handgun. Trial Counsel informed the court that she believed Sargent understood his rights and he was knowledgably waiving them. Trial Counsel affirmed she had

-3-

discussed the case fully with Sargent, including the charges, penalties, and jurisdictional concerns.[1]

The trial court accepted Sargent's plea as knowing, voluntary, and intelligent, and passed the matter for sentencing to allow time for preparation and review of the pre-sentence investigation report.

In January 2025, the trial court held a hearing wherein Sargent indicated that he wanted to withdraw his guilty plea. He argued he was the victim of racial profiling and that he was under duress when he entered his guilty plea. At this point, Trial Counsel withdrew, and Sargent hired conflict counsel.

In February 2025, conflict counsel filed a formal motion for Sargent to withdraw his guilty plea. In that motion, Sargent alleged that both he and Trial Counsel were under duress at the time of the plea.

In March 2025, the trial court held a hearing on Sargent's motion to withdraw his plea. At this hearing, two witnesses testified: (1) Sargent and (2) Trial Counsel who represented him at the August Continuance Hearing and the November Plea.

First, Sargent testified that he was "under duress" when he pleaded guilty because he only had two choices: enter a guilty plea or go to trial that day

---

[1] Sargent has a social security number but identifies as a sovereign citizen of the Choctaw Nation. As such, he questioned the trial court's authority and jurisdiction over him at prior hearings.

with an "incompetent lawyer." Sargent asserted Trial Counsel was under duress during the November Plea because she was nervous and had cried during the prior August Continuance Hearing. Sargent argued Trial Counsel was (a) ineffective because instead of pursuing his duress argument, she pursued "her own" defenses; and (b) under duress because she could not answer (to his satisfaction) his legal questions about his status as a "free, living man."[2]

Also, he stated *all* the legal proceedings were "under duress" due to the fact that he declared such during his original arrest. Sargent testified he took issue with Trial Counsel's representation because she:

> wouldn't bring up the fact that I told the officer at the scene [of the arrest] that I invoked all my inalienable rights, and I actually reserved all my rights and that I would like to be treated as a living man as one of the people that created the Constitution. . . . [Trial Counsel] should have gotten all the [arrest] statements suppressed because before I even talked to the [police] officer, I told him that anything I say to you from this point is under duress. Anything that I do from this point . . . is being done under duress.

Lastly, Sargent testified that Trial Counsel did not discuss the details of the guilty plea with him before court and promised he would get probation. Sargent testified that he had not listened to the judge during the November Plea, but automatically replied in the affirmative to the court's questions.

---

[2] Sargent stated his belief that he was not "Eric Sargent," but rather an authorized representative of the name "Eric Sargent." He stated that as he was a "free, living man," how could he "be a black person on a piece of paper?"

Second, Trial Counsel testified. She admitted she became emotional at the August Continuance Hearing, and at the time, she felt overwhelmed and as if she had a metaphorical gun pointed at her head. However, she stated her emotion did not prevent her from advocating for her client. In fact, Trial Counsel testified that she spent a considerable amount of time on Sargent's case, meeting with him and investigating his various legal and factual theories. She stated not all of Sargent's theories were applicable and/or legally sound, but she investigated and researched his case thoroughly.

Further, Trial Counsel testified that she spoke on the phone with Sargent the night prior to his plea, and during that call, they discussed his options as going to trial or entering a guilty plea. Sargent told her he did not wish to proceed to trial, but she stated she prepared for trial regardless. On the morning of trial, Trial Counsel discussed the plea with Sargent, explaining the motion to enter a guilty plea line by line. Trial Counsel testified that she never promised Sargent that he would receive probation if he pleaded guilty and that she informed him his sentence was left to the discretion of the court.

The trial court denied Sargent's motion to withdraw his guilty plea, finding that neither he nor his Trial Counsel were under any duress at the time of the November Plea. The trial court sentenced Sargent to five years in prison. Sargent appealed.

## ANALYSIS

On appeal, Sargent asserts his plea was involuntary because both he and Trial Counsel were under duress. As such, he argues the trial court abused its discretion in denying his motion to withdraw the guilty plea. We disagree.

"A guilty plea is valid only when it is entered intelligently and voluntarily." *Bronk v. Commonwealth,* 58 S.W.3d 482, 486 (Ky. 2001) (citing *Centers v. Commonwealth*, 799 S.W.2d 51, 54 (Ky. App. 1990)). Whether a plea is voluntary requires an evaluation of the totality of the circumstances. *Id.* (citations omitted). "The trial court is in the best position to discern the totality of the circumstances surrounding a guilty plea." *Williams v. Commonwealth*, 229 S.W.3d 49, 53 (Ky. 2007) (citations omitted)). The totality of the circumstances "include[s] the accused's demeanor, background[,] and experience, and whether the record reveals that the plea was voluntarily made." *Centers*, 799 S.W.2d at 54 (citations omitted).

Any time before entry of a final judgment, a court may permit the withdrawal of a guilty plea. Kentucky Rule of Criminal Procedure 8.10. A trial court's ruling on a motion to withdraw a guilty plea is reviewed for abuse of discretion. *Bronk*, 58 S.W.3d at 487 (citation omitted). A court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by

sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

The trial court's finding that Trial Counsel was not under duress at the time of the plea was not arbitrary, unreasonable, unfair, or unsupported by sound legal principles. Trial Counsel testified that she was not under any duress and had fully explained Sargent's rights to him before the guilty plea. Rather than being unprepared as alleged by Sargent, Trial Counsel testified that she was prepared to go to trial, and it was Sargent's decision to plead guilty. Trial Counsel testified she fully explained Sargent's rights to him before he pled guilty and did not promise Sargent that he would receive probation. The trial court was within its discretion to believe Trial Counsel over Sargent.

As a point of clarity, Sargent appears to argue that Trial Counsel admitted she was emotional and unprepared for trial and this admission demonstrated her duress at the time of his plea. However, that argument commingles two trial dates. The August Continuance Hearing was one day before a *prior* August trial date, *not* the November trial date when he ultimately entered his guilty plea. It was at the August Continuance Hearing where Trial Counsel stated she had more investigation to do and was thus unprepared for the *August* trial date; she did *not* state she was unprepared for the November trial date. In fact,

she stated that she prepared for the November trial date despite Sargent stating he did not wish to proceed to trial.

Sargent portrayed Trial Counsel as overly emotional and unresponsive to his questions; however, Trial Counsel's emotional moment was three months prior to his plea and did not affect her ability to advocate for her client at that time (as the court ultimately granted her requested relief). The trial court repeatedly stated it witnessed Trial Counsel's "impressive" advocacy and believed she gave Sargent a thorough defense. In fact, the trial court stated Sargent's Trial Counsel "left no stone unturned" in his defense and "made sure every avenue" was researched and argued.

Further, the record demonstrates Sargent conflated "duress" with "stress." In *Wagner v. Wagner*, civil "duress" was defined as violence or threats of violence designed to place a reasonable person in fear of bodily harm to him or another. 563 S.W.3d 99, 104 (Ky. App. 2018) (citations omitted). Duress can also be a statutory defense under criminal law and is defined as follows:

> In any prosecution for an offense other than an intentional homicide, it is a defense that the defendant engaged in the proscribed conduct because he was coerced to do so by the use of, or a threat of the use of, unlawful physical force against him or another person which a person in his situation could not reasonably be expected to resist.

KRS 501.090(1). Legally, duress would require physical force, or a threat of such force, be applied to Sargent or his counsel. The evidence in this case is devoid of any force or threat of force against either Sargent or Trial Counsel.

The trial court's finding that Sargent was not under duress at the time of the plea was not arbitrary, unreasonable, unfair, or unsupported by sound legal principles. Sargent testified that he believed every interaction he had with the legal system resulted in duress, from his September 2023 arrest to his November 2024 guilty plea. Overtly stating he was under duress, however, does not make it so. The trial court determined the evidence did not show he was under duress at the time he entered his guilty plea. Sargent may well have been stressed and unhappy about his limited options to choose between an open guilty plea or trial, but that does not equate to duress or any form of coercion.

The trial court's review of the totality of the circumstances surrounding Sargent's guilty plea led to the conclusion that he made the plea voluntarily. "A guilty plea is involuntary if the defendant lacked full awareness of the direct consequences of the plea or relied on a misrepresentation by the Commonwealth or the trial court." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 566 (Ky. 2006). A proper evaluation of the totality of circumstances requires a fact-intensive inquiry, and deference is to be afforded to the trial court. *Bronk*, 58 S.W.3d at 487.

Because of the factual determinations inherent in this evaluation, Kentucky appellate courts have recognized that "the trial court is in the best position to determine if there was any reluctance, misunderstanding, involuntariness, or incompetence to plead guilty" at the time of the guilty plea and in a "superior position to judge [witnesses] credibility and the weight to be given their testimony" at an evidentiary hearing.

*Id.* (citations omitted).

Here, the trial court weighed Sargent's credibility at the hearing to withdraw his plea against his sworn statements at the time he entered his guilty plea. At the time of his plea, Sargent asserted he understood all the rights that he was waiving; he understood the consequences of his plea; he was not being forced to plead guilty; and he was satisfied with his attorney. The *Boykin*[3] colloquy performed by the trial court was detailed, thorough, and specific. Sargent averred that no one threatened him, and no one made him any promises. The court and Trial Counsel were both prepared to begin a trial that day and did not pressure or coerce his plea during his colloquy. While he later contradicted that recitation, his contradictions are not supported by the record. The trial court accepted his under-oath affirmations at the time of his guilty plea, and Sargent did not later sufficiently rebut those affirmations. The record supports the trial court's determination that

---

[3] *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

Sargent was aware of the direct consequences of the plea. and there was no misrepresentation by the Commonwealth or the trial court during his plea.

There is sufficient evidence in the record to support the trial court's finding that Sargent's guilty plea was made voluntarily. The trial court did not abuse its discretion in denying Sargent's motion to withdraw his guilty plea as that determination is not arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

## CONCLUSION

Accordingly, we AFFIRM the Kenton Circuit Court.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Kayley V. Barnes<br>Frankfort, Kentucky | Russell Coleman<br>Attorney General of Kentucky |
| | Ken W. Riggs<br>Assistant Attorney General<br>Frankfort, Kentucky |